THE UNION BANK OF FLORIDA AND CHARLES MORRISON, APPELLANTS, VS. RICHARD K. CALL, APPELLEE.

1. Instructions not excepted to at the trial, nor referred to nor introduced in the bill of exceptions, will not be noticed by the Supreme Court.

2. A deed signed by the President, and under the seal of a Corporation, *prima facie* is valid, and the burthen of showing that it was done fraudulently, or without authority, devolves on the party contesting it.

3. The admission of a deed in evidence, after its rejection by the Judge, is not error, unless prejudice or injury is shown.

4. Books of account of the Cashier of a Bank not evidence as to strangers.

5. It is not proper to ask of a witness his designs in making a deed, or his construction of it.

6. A release under seal is good without a full consideration.

7. A deed by a President of the Bank should conform to the order of the Board of Directors, but it is not, on account of a deviation, void, especially after a lapse of ten years, and the Bank has received and retained money under it; nor does it lie with a stranger to raise the objection.

8. It is not error to refuse an indefinite instruction.

9. Notice to an agent is notice to the principal.

Appeal from Leon Circuit Court.

This was a motion in the nature of an *audita querula* to quash an execution issued on a judgment in favor of the Union Bank, against R. K. Call, on the ground of a release subsequent to the rendition of the judgment. Morrison, who claimed to hold this judgment by assignment from the bank, appeared and opposed the motion.

On the twenty-fifth day of February, 1842, the Union Bank recovered against Richard K. Call a judgment for $4080 40.

The notes upon which this judgment was obtained, were secured by a mortgage, executed by R. K. Call and George K. Walker, dated 14th April, 1840, and also by a mort-

gage executed by R. K. Call, President of the Tallahassee Railroad Company, dated 20th April, 1842.

On the fourth day of April, 1843, an indenture was entered into between the Union Bank of Florida, of the first part, Daniel Meinertzhagan, (as partner of the commercial House of Frederick Huth & Co., in London,) in behalf of himself and said House, of the second part, and Richard K. Call and George K. Walker, of the third part, by which said Bank assigned to Meinertzhagan sundry notes of Call and Walker, amounting to $88,292 24, for a full and valuable consideration, and also assigned to said Meinertzhagan the mortgages executed by Call and Walker on the 14th April, 1840, and by Call, as President of the Tallahassee Railroad Company, on the 20th April, 1842. By this indenture, the Bank, for the purpose of making the security of Meinertzhagan full and complete for the payment of the notes so assigned, agreed to release and did thereby release all lien, whether created by judgment, mortgage, or otherwise, on the property embraced in the said mortgages so assigned, and every part thereof, to secure any other liability whatever of Call and Walker, other than the liabilities so therein transferred to Meinertzhagan. And it was further agreed that the bank would look to the other parties on the notes described in the mortgages aforesaid, whether they have been prosecuted to judgment or not, for which Call and Walker are responsible as endorsers or sureties, in any manner, and in case it became necessary, on failure to collect said notes from the principal parties thereto, to resort to the securities thereon, the Bank agreed to receipt to said Call and Walker for their proportion of each of said notes, according to the number of endorsers respectively, &c. Under this deed, Call claimed to be released from the judgment in question.

On the 22d day of February, 1843, the Union Bank of Florida, by an instrument signed by John G. Gamble, President, assigned to Charles Morrison the notes upon which this judgment was obtained. By this instrument, it appears that R. K. Call, with several other parties, were endorsers of these notes, and that judgments had been recovered against them respectively by the Bank.

Call, by his attorneys, moved the Court to exclude this deed of assignment from the consideration of the jury, because there was no proof to show that John G. Gamble was authorized to execute the same, and to affix thereto the seal of the Bank, by any resolution of the Board of Directors, and the Court thereupon refused to allow said deed to go in evidence, without such proof, to which Morrison, by his attorney, excepted. Morrison, by his attorney, thereupon renewed his offer to introduce said deed in evidence, in connection with certain testimony which it was expected would be given in evidence, to show that said deed was executed by authority of the Board of Directers, or that the said Board ratified the same subsequent to its execution; whereupon the said deed was then permitted by the Court to be read to the Jury, subject to its charge as to its legal effects as evidence.

Morrison then offered in evidence the following entries in the minute book of the proceedings of the Board of Directors of said Union Bank, for the purpose of proving the authority to Gamble, the President, to execute the assignment to Morrison, or its subsequent ratification :

Extract from minutes of Stockholders of Union Bank of Florida, in General Meeting, in the year, 1843, commencing first Monday in February, (6th,) and continued by adjournment,

THURSDAY, February 9th.

The General Meeting convened on Thursday, the 9th February, pursuant to adjournment, and the Chairman having called the meeting to order, the minutes of the General Meeting from its commencement, were read and adopted.

" The resolution reported by the Committee again coming up, it was adopted, after being amended so as to read as follows:

" *Resolved*, That the Directors of the Bank be authorized and instructed to transfer and assign any of the assetts of the Bank, other than the stock notes, in payment of any of its endorsed liabilities : *Provided*, That any of the holders of any such liabilities, shall, upon receiving such assetts, for any part of their debt, surrender an equivalent amount of Territorial bonds, which they may hold as collateral security.

" The meeting, after deliberating upon other matters, adjourned over to the next day, the 10th, at the conclusion of the session on which day, the minutes read as follows :

" The General meeting having disposed of all the business before it, on motion, adjourned to meet again on the 1st day of March next.

(Signed)          JOHN C. McGEHEE,
*Chairman.*

(Signed)     C. F. MERCER,
*Secretary.*

Extract from the minutes of the Board of Directors of the Union Bank of Florida, at a meeting held at the Banking House, in Tallahassee, on 1st of January, 1843.

" The following resolution was moved and carried, viz:

" *Resolved*, That the President, C. H. DuPont, R. W. Williams and R. H. Bradford be appointed a Committee,

(any two of whom to act,) to confer with the partners of the House of Huth & Co., of London, on the subject of their claim upon the Union Bank of Florida, and in their absence, with the agent of the House in Tàllahaasee, to ascertain 'and report upon the sum due on the 1st of January, 1843, and to arrange some mode of paying the interest now due, and providing for the payment of the principal and interest of said claim hereafter, and 'that the same Committee have power in like manner to confer with any representative of the House of Morrison, Sons & Co., in relation to their claims upon the Union Bank.

" The Board then adjourned.

(Signed,)      " C. F. MERCER."

Wednesday, 22d February, 1843, the President submitted the following resolution to the Board, which, after they had unanimously stricken therefrom the proviso requiring the guarantee of the Cashier, was, by a majority, adopted, viz :

" *Resolved*, That on the certificate of the Cashier of the Union Bank of Florida, that the endorsed sterling bonds and the hypothecated Territorial bonds, held by the House of Morrison, Sons & Co., of London, are committed to the care of their agent Samuel Jaudon, of the city of New York, the order of Charles Morrison, representative of that House, now in the city of Tallahassee, upon Samuel Jaudon, for the delivery of said bonds, or any part thereof, to John Palmer, President of the Merchant's Bank of New York, for the use and benefit of the Union Bank of Florida, shall be taken from the representative of the House of Morrison, Sons & Co., as equivalent to the .delivery of said bonds, or such part thereof as the said order may comprehend, to this Bank : *Provided*, The Cashier of this Bank shall guarantee the delivery of the bonds for which such

order may be given to the said John J. Palmer, on the presentation of the order to S. Jaudon, Agent as aforesaid of the House of Morrison, Sons & Co."

Extract from the minutes of Board of Directors :

"On Thursday, 11th January, 1844, we burned the following sterling bonds, which were received from James Morrison & Sons, viz:

"28 bonds of £500, No. 158 to 185 inclusive, dated 1st October, 1841, payable 1st July, 1845, endorsed by John G. Gamble, D. C. Wilson, William P. Craig, W. Wyatt, T. P. Chaires, C. H. DuPont, A. M. Gatlin, B. W. Gause, H. W. Braden, Sam. Parkhill, B. F. Whitner, C. Rouse, G. T. Ward, J. Parkhill, F. Eppes, M. Walker and C. F. Mercer.

(Signed,)    ROB'T. W. WILLIAMS, JOHN G. GAMBLE."

"WEDNESDAY, 21st February, 1844.

"The President read and signed the minutes of the last meeting of the Board. He then exhibited to the Board the receipt of R. K. Call, Governor of the Territory of Florida, for seventy-one bonds of the Territory, which the President of the Bank had delivered to him, for the purpose of being cancelled, each bond being for one thousand dollars, dated 1st of January, 1838, signed R. K. Call, Governor, and countersigned T. H. Austin, Treasurer, of which bonds there were of

"Letter A, No. 1497 to 1500, both inclusive, 4 bonds, payable 1st January, 1862.

"Letter B, Nos. 1936 to 1969, both inclusive, payable 1st January, 1864, 34 bonds.

"Letter C, No. 2468 to 2500, both inclusive, payable 1st January, 1866, 33 bonds—Bonds 71."

NOTE.—These bonds are entered in register, received from Charles Morrison.

"10th July, 1844, the Board also burned the coupons of interest upon the following Territorial bonds, which bonds have been received by the Bank from various parties, viz : Nos. 2, 11, 22, 246, 247, 287, 288, 289, 402, 414, 434, 435, 666, 667, 689, 705, 711, 712, 713, 720, 721, 722, 723, 731, 732, 733, 861, 1497, 1498, 1499, 1500, 1827 to 1862, inclusive, 1936 to 1969, *both inclusive*, 2359 to 2395, inclusive, 2468 to 2500, inclusive, 2855 to 2865, inclusive, 2889 to 2913, inclusive.

In the book which contains a register of the bonds received from the Territory, will be found minutes of what relates to the reception, cancelling, &c., of said bonds, in full detail."

Morrison then offered to read in evidence, for the same purpose, certain entries in the book of accounts of said Bank, accompanied by the testimony of a witness, to prove that said books of account were at all times subject to the inspection of the Board of Directors, and that an examination of said books had been made by a Committee of the said Board, and that said book and its entries had never been disavowed by said Board; to the introduction of which, said Call, by his attorney, objected, and the Court sustaining said objection, said Morrison, by his attorney, excepted.

Morrison then offered the deposition of Charles F. Mercer, who testified that as attorney of Charles Morrison, he received an assignment, from the Union Bank to said Morrison, of certain notes and judgments, which was made to satisfy a debt due to said Morrison, and that said assignment included two notes of C. E. Bartlett, endorsed by Call. These are the notes upon which the judgment in question

was rendered. That he accepted the trust of Morrison with the intention of performing all its obligations in good faith, and that he believes he gave all the notices which his duty as such attorney required of him, and doubts not that R. K. Call knew at the time, or shortly after, of the said assignment to Charles Morrison. He gave written notice of said assignment to George K. Walker. He was appointed attorney of Charles Morrison in February, 1843, at the date of the assignment to him as aforesaid. He was appointed attorney of Frederick Huth & Co., in London, sometime in October, 1842, and regarded himself as such until he instituted a suit against them. On his return to Tallahassee, he immediately entered into negotiations with G. K. Walker, acting for himself and R. K. Call, for the payment of a debt due to Huth & Co., from the Bank. Pending this negotiation, Meinertzhagan, a partner of the House of Huth & Co., arrived in New York, and instructed him, witness, to await his intended journey to Tallahassee, and to take no steps in behalf of the House prior to his arrival, so that, although appointed attorney, his functions ceased, in the opinion of Meinertzhagan, and he afterwards so insisted.

George K. Walker, a witness on the part of Morrison, testified that he had, for a long time previous to the transaction spoken of, acted as the general agent of R. K. Call; that as such agent, he transacted almost all kinds of business for account of said Call; that he had less to do with the real estate of Call than his other interests; that he had once received a power of attorney, thinks it was in 1838 or 1840, which was produced, and read as follows:

### Power of Attorney.

Know all men by these presents that I, R. K. Call, of the County of Leon and Territory of Florida, hath constituted and appointed George K. Walker, of the County and Ter-

ritory aforesaid, my true and lawful attorney, for me and in my name to transact for me all and every kind of business whatever; to purchase or sell for me, in my name, all kinds of property, real and personal : to sign my name to any note, bond, draft, deed, or any other instrument, and to bind me thereby in as full and ample a manner as I myself could do, were I personally present and signing the same.

I hereby authorize my said attorney to fix my seal to all and every kind of instrument which he may think in any wise necessary or-proper.

Hereby ratifying and confirming whatever my said attorney may do touching the premises.

R. K. CALL.

Witness further stated that he acted as the agent of Call and for himself in conducting the negotiation with the U-nion Bank and Meinertzhagan, which resulted in the execution of the deed signed by himself, Call and Meinertz-hagan, in April, 1843 ; that he, witness, from time to time during the progress of the negotiation, communicated with Call in relation thereto, and advised and consulted with him as to the terms thereof, and that Call took no active part in the making of said arrangement, but consented to the terms of said deed, and signed it without objection ; that prior to the time at which such negotiation had commenced, he, the witness, had received notice from Charles F. Mercer, as agent of Charles Morrison, that the notes which are the foundation of the judgment in question, and on which he, witness, and Call were endorsers, together with the judgment thereon, had been assigned to said Morrison.

Witness further stated that at the time of said negotiation with Meinertzhagan, he knew of said assignment to

Morrison, but does not know that the fact was made known to Call at that time.

Morrison then proposed to prove further by said Walker that at the time of the execution of said deed with Meinertzhagan, and during the negotiation referred to, he, the said Walker, did not contract with the said Union Bank for a release of the judgment against him, said witness, and said Call, on the notes referred to ; to which evidence so proposed to be given, Call, by his attorney, objected, and the objection being sustained, an exception was taken.

Call offered in evidence certain correspondence between Huth & Co. and C. F. Mercer, on the appointment of the latter as the attorney of the former, in October, 1842, by which it was agreed that in consideration of the allowances to said Mercer, he was to give up the whole of his time, as far as it might be necessary, to the prosecution of the claim of Huth & Co., and not to take charge of any other business which could in any way interfere with their's.

The following entries from the minute book of the proceedings of the Board of Directors of the Union Bank, were read in evidence by said Call :

"At a meeting of the Board of Directors of the Union Bank of Florida, on Wednesday, the 5th of April, 1843, present, John G. Gamble, President, R. W. Williams, R. Hayward, H. W. Braden, John G. Anderson, D. C. Wilson, Esqrs., Directors,

"The President, as one of the Committee appointed last week to confer with Messrs. Meinertzhagan and Huth, reported the following memoranda of what had been agreed upon by the Committee :

"Mem.—The Committee and G. K. Walker have agreed 'That upon Call and Walker, paying to the Bank, in its endorsed Sterling Bonds, the sum of $88,292 24, the amount due for principal and interest upon nine notes de-

scribed below, and upon payment by them, (in bonds of the Territory of Florida, which have been sold by the Bank, or by the payment in any other of its liabilities,) of five notes of Samuel Reid, amounting $8,711 70, and one note of R. K. West, amounting $1491 16, with the interest due upon said notes, upon which said notes said Call and Walker are endorsers, the bank agrees to look to other parties, (payers and endorsers,) upon other notes endorsed by said Call and Walker, now belonging to the Bank, described in the mortgages which were executed by the Tallahassee Railroad Company and by said Call and Walker, on the 20th of April, 1842, for payment of said notes; and in the event of the failure to collect the amount of said notes or obligations from the original parties thereto, and recourse to the endorsers and securities thereon becomes necessary, the Bank will receipt to said Call and Walker for their proportion of each of said notes or obligations, said Call and Walker covenanting and agreeing to assign and transfer to the Bank all the securities under their control, given for the security of the payment of said endorsed notes, and at all times to give their aid in the collection of said endorsed notes.

" The notes referred to above are :

| | | | | | |
|---|---|---|---|---|---|
| " Call and Walker, due 1st January, | | | 1843, | $12,688 | 00 |
| " | " | " | 1844, | 414 | 00 |
| " | " | " | " | 26,571 | 45 |
| " | " | " | " | 3,388 | 50 |
| " | " | " | " | 21,829 | 21 |
| " | " | " | 1846, | 3,132 | 39 |
| " | " | " | " | 20,323 | 74 |
| Call, Walker, and others, 15th, Oct'r., 1839, | | | | 6,000 | 00 |
| R. K. Call, President, 1st April, 1841, | | | | 1,693 | 00 |

(Signed,)     JOHN G. GAMBLE, *President,*
              G. K. WALKER.

At the close of meeting, signed,

" JOHN G. GAMBLE,

" *President.*"

The foregoing is correctly extracted from the Book of Minutes of the Board of Directors of the Union Bank of Florida, by        C. G. ENGLISH,

*Solicitor.*

Call further produced Thomas Brown as a witness, who stated that he, witness, was a party endorser on the notes of C. E. Bartlett, on which the said Call and Walker were also endorsers, and on which the judgment in question was rendered against said Call and Walker, and that he was not notified by Charles Fenton Mercer, or by any other person, of the assignment of said notes to said Morrison, by the Union Bank of Florida, by the deed of    , 1843.

. No other testimony being introduced, the said Morrison, by his attorney, moved the Court to instruct the jury as follows :

1. That the release given in evidence is upon its face not binding on the corporation, and unless there is proof that some other security was given than that stated in the deed, it does not amount to a release to Call and Walker of the debts covenanted in the deed to be released, because the Directors could not lawfully release the debts due the Bank, unless the debtor gave some consideration for the release.

2. If the deed of release was not made in conformity with the resolution of the Board of Directors, and not upon the consideration required in the resolution to be paid by Call and Walker, then such release is not binding on the Bank, without evidence to shew that the Directors consented to the deed of release in the form in which it was made.

3. A resolution framed by the Board of Directors, authorizing the release of Call and Walker from notes and judgments, which resolution contained the words " now belonging to the Bank," does not authorize the execution by the President of the Bank, under the seal of said corporation, of a release, without any exception, such as the resolutions contain. The words, " now belonging to the Bank," if found in such resolution, are to be considered as being intended by the Directors to have the legal effect to exclude from the release all notes and judgments which had been assigned by the Bank, if any such had been assigned.

4. If the jury find that Mercer has sworn, on his cross examination, that he never did agree to any release of the judgment against Call, such evidence is entitled to more credit than any inference drawn from any agreement made by Mercer with Huth & Co. The positive testimony of Mercer that he did not assent to any release of the judgment, is entitled to more weight than inferences based upon promises of Mercer to Huth & Co., to do no business for any other person.

5. The books of account of the corporation, with proof that they are such books, and without evidence to shew that the entries were improperly made, are evidence to prove the acts by the entries in such books stated to have been done. Such entries, when shown and proved to have been made before the date of the deed of release to Call and Walker, are competent testimony for the jury to consider in determining whether the assignment given in evidence, was made by authority of the Directors.

6. If the jury find from the evidence that Walker acted as the agent of Call in making the negotiation and arranging the terms, which are evidenced by the deed of the 14th of April, 1843, signed by said Call and Walker, and others,

and given in evidence, and the jury find from the evidence that Walker had knowledge at the time he made such negotiation, and whilst he so acted as agent of Call in respect thereto, that the judgment in question had been assigned to Morrison, such proof of knowledge on the part of Walker, is evidence of knowledge by Call of the assignment aforesaid.

Which instructions the Court refused to give to the Jury, as prayed for, and said Morrison, by his attorney, excepted.

The Jury having returned a verdict in favor of Call, judgment was rendered thereon, from which Morrison appealed.

*T. Randall* for Appellants.

*J. T. Archer* and *M. A. Long* for Appellee.

BALTZELL, C. J., delivered the opinion of the Court.

On the 25th day of February, 1842, the Union Bank recovered judgment against Richard K. Call for the sum of $4080 40, on which an execution issued the 29th day of February, 1851. On the     day of     , Call filed his *audita querela,* claiming that the judgment was released and the execution discharged, and praying that it might be so declared.

The Bank disclaimed any interest in the judgment and execution, having, as they stated, assigned the same to Charles Morrison. He files his answer and states that on the 22d February, 1843, the Bank, for a full and ample consideration, actually paid, assigned to him the said judgment, with other claims ; so that the controversy is in fact between Call on the one side, claiming under his release, and Morrison under his assignment, and it has been so treated on both sides.

The case was tried by a jury, who found for the plaintiff,

Call. On the trial, Morrison excepted to various rulings of the Court, which are now presented for consideration. His assignment of errors embraces the instructions given to the jury, but we are of opinion that these are not properly before the Court, and cannot be considered. Although copied into the record, they form no part of it, as they were not excepted to at the trial, nor embodied or referred to in the bill of exceptions. It is perhaps not very material in this case, as the instructions refused and the other rulings properly objected to, present the material questions in the case.

Morrison offered in evidence a deed of assignment from the Bank to him, signed by the President, and under the corporate seal, which the Court rejected, because there was no proof that it was authorized by the Board of Direct. ors, but afterwards permitted it, on the representation of the defendant that he expected to show that the deed was executed by authority, and that the Board ratified it subsequent to its execution; the Court saying it might be read, subject to its charge as to the legal effect. This is complained of as erroneous. It is difficult to perceive the injurious effect this ruling had during the progress of the trial, as no further notice was taken of it. No instruction of the Court was given in reference to it, and defendant seems to have had the benefit of his assignment before the Jury. There is no question, we think, that the deed should have been admitted, without qualification, as conveying the right of the Bank *prima facie*, throwing upon the adverse party the burthen of showing that the seal was fixed improperly—surreptitiously as some of the authorities say; through fraud and without authority, according to others. Angel & Ames, 194; 6 Paige, 56, 60.

Morrison then offered in evidence certain entries in the book of accounts of the Bank, admitted to be kept by the

Cashier and other officers of the Bank, which the Court rejected, and this is assigned for error. We think the Court decided correctly. Whatever weight these may have as against the Bank or its members, they are no evidence of right against strangers; it was not a public but a private entry. Angel & Ames, 606-'7. ; Archd. Pl. and Ev., 415; 1 Greenl., 415.

Nor do we we think the Court erred in rejecting the questions proposed to George K. Walker that were objected to. The contract was for the construction of the Court, and not of a witness, however intelligent; nor was it proper to ask his designs in its execution. The object of reducing the deed to writing, was to prevent a reference to parol testimony, so that the instrument should speak for itself, according to the fair construction of its terms.

The counsel for Morrison then proposed certain instructions to the jury, which were refused, which we now propose to consider.

The first instruction is for want of consideration on the part of Call, in the part of the contract embracing this judgment, and the want of authority of the Board of Directors to release debts without consideration. The instrument is under seal, and this imports consideration. " If a creditor signs a release to his debtor, this is sufficient." Bull. N. P., 153; Forsyth Comp. Cred., 17.

" A creditor cannot preclude himself, by simple agreement (not under seal,) to take less than the whole amount of his debt, from suing the whole of his demand. But if a man acknowledge himself to be satisfied by deed, it is a good bar, without anything received." Pinnel's Case, 5 Coke, 117 ; Forsyth, 17.

In this case, Call paid $88,200 for his own debt, and secured $10,000 for the debts of Reid and West. Now what is to prevent this from operating as a consideration for the

whole ? There is no evidence that he was able to pay more, or that more could have been made by the rejection of this arrangement, and a course of greater severity and exaction. It may have been to the interest of the bank to accept this much, even if it were one third or one half only of the indebtedness, in preference to a resort to legal proceedings. We take it for granted the Board of Directors were acquainted with the facts, and competent to judge of the propriety of the act, and as they do not complain, and have not alleged any exception, that there is in truth no valid cause of objection. We do not think there was error, then, in refusing this instruction.

The second instruction is predicated upon the difference between the resolution, or rather the report of the Committee to the Board of Directors, and the deed of the President, the latter providing security for payment of the debts of Reid and West, whilst the former directs their actual payment. There is no proof of non-payment of these, nor of dissatisfaction by the Bank on their account. It is supposed, and the instruction is based on the ground, that the deed of the President is void, because it does not pursue the order of the Board. We do not think so. It is not every deviation that makes such a deed void. It might have justified the Directors, perhaps, in rejecting or refusing to execute and declaring it a nullity. But it is their option to do so, or they may act upon and adopt the contract in its new shape. The presumption from receipt of the $88,-000 from Call, and the release of the Bank as to the $10,-000, is that it was not disagreeable to them, and they ratified it. Certainly after the lapse of near ten years, this would be the case. The Bank could only disaffirm the contract by dissent in a reasonable time, and returning the amount received. But there is a very decisive answer to a declaration of the Court that the deed is "not binding"

at the instance of Morrison. It is not for him to set up the invalidity. The Bank is the party to make complaint, and if she waives or surrenders her rights, it is not for others to assert them. Whilst satisfied with the view thus taken, it may be appropriate to refer to authorities on the subject. In Burnett vs. Nahant, the Directors " authorized two of their Board to *sell and transfer* any estate or property of the Bank," and they mortgaged the Banking House, which was objected to as unauthorized. The proof was that there was no vote of the Board, and the witness, an officer of the Bank, understood from the Directors individually that they were to make the *mortgage*; that they received from the party a bond not to put in circulation a certain sum in bills of the Bank, and that the Cashier paid costs of suit as part of the adjustment, but that the bills were not given up. The Court say that " this shows a ratification, without enquiry whether the act pursued the authority." 2 Met., 167.

Clarke vs. Imperial Gas Light Company, was the case of contestation of a corporate seal, on the ground of want of authority, and other irregularity. The Court, Denman C. J., say : " It is enough, however, to observe that proof of this irregularity does not appear in plain terms upon the case, and the Company, seeking to set aside its own formal act, on the ground of irregularity in the preliminary proceedings, ought to make out such a defence by the most cogent proof. If this (alluding to same act,) were regularly done, before affixing the seal to the instrument, all would be right, and inasmuch as the seal was set by those who had the power of affixing it to an instrument, to give effect to a bargain which the Company had power to make, and *as no fraud is found in the case* to attach to the plaintiff, and there is a '*possibility*,' upon the facts set forth, that the apparent irregularity may not have occurred, we think

the plaintiff is entitled to judgment." 1 Neville & Mann, 218.

In Lovett vs. Steam Mill Company, the Court held the mortgages executed by the President, who had the legal custody of the seal, were *prima facie* evidence that the whole amount secured thereby was justly due, and it lay on the defendant to establish the fact by legal proof that there was fraud in obtaining it, or that the seal was improperly placed on the bonds and mortgages, without authority. 6 Paige, 61. These are cases between the party and a corporation.

The third instruction is too indefinite. Admitting that the deed executed was not authorized by the resolution, and that the construction of the words " now belonging to the Bank," was as contended for, what follows? Were the jury to find for defendant, or to infer that on this account it was void, or passed no interest? If given, it might have misled the jury, without enlightening them. Even if asked in the manner supposed, we do not think, for the reasons already assigned, the instruction should have been given.

The sixth instruction relates to notice by Call of the assignment of Morrison, and is predicated on the evidence in the record to that point.

G. K. Walker deposes that "he was general agent of Call, and transacted all kinds of business for him, and produces a power of attorney to that effect, authorizing him to purchase and sell for him all kinds of property, real and personal, and to sign his name to any note, bond, draft, deed, or any other instrument, and to bind him thereby in as full and ample a manner as he could, if he were present." He, Walker, was party with Call in the deed with the Bank, and equally bound with him in its covenants; was

6

defendant in the execution and judgment obtained on the notes of Bartlett, and alike interested to procure its release ; was joint mortgagor of the property mortgaged to the Bank which was assigned to Huth & Co. ; was joint promisor and endorser on other notes enumerated in the deed of the Bank, which were transferred to Huth & Co. He says "that he acted for himself and as agent for Call in the negotiation, and communicated with him in reference thereto, and advised and consulted with him as to the terms of the negotiation ; that *Call took no active part* in making the arrangement, but adopted and consented to the terms of the deed when finally settled, and signed it without objection. He says further, that he, Walker, prepared the deed himself."

It appears further that Walker's name was signed, with that of Gamble, to the report made to the Bank of a Committee appointed to adjust the terms of the settlement. He also proves that prior to the time at which the negotiation commenced, he, Walker, received notice from Mercer, attorney of Morrison, of the assignment of the judgment on the Bartlett notes, and produces the notice, but does not know that he made the fact known to Call. Under such a state of facts, would a jury have been justified in finding, as prayed by the instruction, that Call had knowledge of the assignment ? We think very clearly they would. "The general rule is that notice to an agent is notice to the principal himself." Story on Agency, 132.

It has been argued that Call was on the spot, and was able to and did in fact attend to the business himself, by signing the deed, and on that account is not subject to the operation of the rules applicable to agencies. We do not think so. It may be a question, indeed, whether he is not held more strictly liable for failing to use the diligence a prudent man should exert in the conduct of his

affairs. If attending personally to the negotiation, he could not have failed to inform himself of the assignment of this judgment equally with Walker, who conducted the negotiation.

The principles of law are too well settled to admit of a doubt even on the subject. The leading case is that of Le Neve vs. Le Neve, decided by Lord Hardwicke, after very mature consideration. In this case, the party was held liable to notice on account of information possessed by her solicitor, although there was no proof of knowledge on her part; and he notices the decision of a previous case of a contract made by an agent who was cognizant of a previous settlement, and his principal was held liable, although there was no proof of any communication to him of the fact. 3 Atkins, 646. Again, Walker was co-obligor with Call as to the covenants in this deed, and notice to him is sufficient. White & Tudor Case Eq., 214; 2 C. &. M, 231; 2 Keen, 35.

It is a material fact that the report of the Committee of the Board of Directors, appointed to negotiate the terms of settlement, agreeing in other respects with the deed made by the President, has the words, " Notes endorsed by said Call and Walker *now belonging to said Bank*, described in the said mortgages." They are omitted in the deed. This report is adduced by the plaintiff, Call, himself, in its support, and it is contended that these words are without force or meaning, and would not have varied the deed, if introduced into it. We do no think so. The effect of the omission is not before us. We are clear in the opinion, however, that it is important as far as the question of notice is concerned. It is signed by Walker, and may be regarded as additional notice in the course of a transaction in which he was acting on behalf of his principal. The fair presumption is that it was communicated to

Call, as the omission to do so would hardly comport with the duty of the agent or the natural desire of the principal to inform himself of the terms on which the Bank was willing to contract.

We are of opinion, then, that the 6th insttuction should have been given to the jury, and that the Court erred in rejecting it.

The question of preference of a subsequent purchaser, or release without notice, over a prior assignee of a judgment and execution, has been argued before us with masterly ability, but as the question is one of great difficulty, and there is a painful conflict of authority about it, we have thought it most prudent to defer its consideration and decision to a more appropriate occasion, especially as this case may be decided in the Court below without it.

It is therefore considered by the Court that the judgment of the Court below be reversed and set aside, and the cause remanded, with instructions to the Court below to give the sixth instruction, as asked by the defendant, and for further proceedings, not inconsistent with this opinion.