Argued February 26, affirmed March 18, 1919.

## CLARK v. JONES.

(179 Pac. 272.)

**Master and Servant—Injury to Third Person—Automobile Accident.**

1. The contention that the relation of master and servant was not shown between the defendants, father and son, must be overruled, since proof of the father's ownership raises the presumption that the automobile driven by the son was driven for the father's use by his agent or servant.

[As to liability of owner of automobile for acts of his chauffeur or agent, see notes in Ann. Cas. 1914C, 1087; Ann. Cas. 1916A, 659.]

**Municipal Corporations—Streets—Accidents—Negligence—Last Clear Chance—Evidence.**

2. In an action by plaintiff injured by an automobile running from 5 to 10 miles an hour in a city street where the driver saw plaintiff more than 100 feet away and did not stop car or give signal, evidence *held* to sustain a verdict for plaintiff under the doctrine of last clear chance.

From Marion: PERCY R. KELLY, Judge.

Department 2.

R. E. Jones is the son of the defendant M. L. Jones. On July 27, 1916, about 2 P. M. the plaintiff alighted from the Chemeketa Street car running east and west on State Street in the City of Salem, at the intersection of State and Commercial Streets. She then went to the southwest corner of State and Commercial Streets and waited on the curb for about ten minutes to take the Commercial Street car going north to the fair grounds. She was the leader of a party of eleven

people, adults and children, who were sightseeing.
When the plaintiff left the curb to board the street-car
she was struck by an automobile driven by the defend-
ant R. E. Jones, and sustained certain alleged personal
injuries, for which she brought an action against the
defendants, alleging:

"That said defendants carelessly and negligently
failed to keep the proper lookout ahead for the pur-
pose of seeing and avoiding the plaintiff and other
pedestrians upon said streets and the intersection
thereof; that said defendants carelessly and negli-
gently ran and operated said automobile upon and
over the plaintiff from behind when she was attempt-
ing to go around and get aboard said street-car, with-
out sounding any horn or other warning to warn said
plaintiff of his approach."

And that the defendants were further negligent in
permitting the automobile to be driven by an unfit and
improper individual.

The plaintiff also alleges:

"That State Street and Commercial Streets were,
on" the date of the accident "and now are, public
thoroughfares of Salem, Oregon, and that during all
times mentioned in this complaint said streets and the
intersection thereof were greatly and frequently used
by pedestrians, vehicles and automobiles, all of which
was and is well known to said defendant."

The defendant M. L. Jones answered, admitting
that he is the father of R. E. Jones, and the allegation
last above quoted, and denying all other material aver-
ments. The defendant R. E. Jones in his answer ad-
mitted the relationship between himself and the de-
fendant M. L. Jones, and the allegation last above
quoted, but denied all other material statements con-
tained in the complaint. As a further and separate
answer R. E. Jones alleged facts tending to show that

the plaintiff was guilty of contributory negligence which would prevent her recovery.

A reply was filed and a jury trial was had. At the close of the plaintiff's testimony the defendant M. L. Jones moved for a nonsuit for the reason that there was "no evidence introduced on behalf of the plaintiff showing or tending to show that any negligence upon his part was the proximate cause of the accident * * or tending to show that he was the owner of the automobile in question"; also that there was "no evidence showing or tending to show that the driver of the automobile, at the time of the accident, was his agent, or so acting within the scope of such employment." This motion was overruled and each of the defendants then moved for a judgment of nonsuit on the grounds that there was "no evidence upon the part of the plaintiff showing or tending to show that any negligence on the part of either of the defendants was the proximate cause of the injury, and that the affirmative testimony given by the plaintiff while upon the witness-stand shows that she did not heed the approach of a car, or failed to exercise reasonable or any degree of diligence in ascertaining the approaching car, and particularly failed to look or listen for an approaching car." After argument each of these motions was overruled and the defendants duly excepted, and introduced their evidence.

After instructions the jury returned a verdict for the plaintiff against the defendants in the sum of $500, upon which judgment was entered, and both defendants appeal, claiming that the court erred in overruling the motion filed by the defendant M. L. Jones for a nonsuit, in overruling the motion filed by each of the defendants for a nonsuit and in not dismissing the action.                                    AFFIRMED.

For appellants there was a brief over the names of *Messrs. McNary & McNary* and *Mr. Ralph D. Moores,* with an oral argument by *Mr. John H. McNary.*

For respondent there was a brief over the names of *Messrs. Smith & Shields, Mr. J. G. Arnold* and *Mr. Allan A. Hall,* with an oral argument by *Mr. Roy F. Shields.*

JOHNS, J.—1. The defendants' brief was written before some of the recent decisions of this court were rendered, and a large portion of it is devoted to the contention that the relation of master and servant was not shown to exist between the father and son, and, therefore, that the father, M. L. Jones, was not liable for the negligence of the son, R. E. Jones. However, that question was decided adversely to the defendants in the cases of *Houston* v. *Keats Auto Co.,* 85 Or. 125–129 (166 Pac. 531); *West* v. *Kern,* 88 Or. 247–254 (171 Pac. 413, 1050 L. R. A. 1918D, 920), and *Doherty* v. *Hazelwood Co.,* 90 Or. 475 (175 Pac. 849, 177 Pac. 432). Hence, the only remaining question is whether or not the testimony is sufficient to sustain the verdict.

2. It appears from the record that there is a crossing of the street-car lines at the intersection of State and Commercial Streets; that the automobile was driven from north to south on Commercial Street, and that the street-car which was standing and waiting to receive passengers on Commercial Street had stopped at a point a few feet south of State Street. The testimony of the plaintiff tends to show that she left the curb on Commercial Street and went directly to, and within a few feet of, the north end of the street-car and then turned south, with a view of going behind

and around the south end of the car for the purpose
of boarding it on the east side. There is also testi-
mony which tends to show that after she had gone a
short distance from the curb she walked diagonally to
a point near the south end of the car. She testified
as follows:

"Q. Now, when the Commercial Street car came
up what did you do?

"A. I waited for the car to stop, and recognized,
realized, that car opened on the other side, and that
car stopped, and I didn't want to go in front of the
car and walked down the side of the car to the rear
so to meet my people when they got there. * *

"Q. And when you came out from the corner toward
the car, what part of the car did you approach?

"A. The front of the car.

"Q. Then what did you do?

"A. Went down the side of the car to the rear. * *

"Q. Why did you turn back toward the rear end of
the car?

"A. Because the opening of the car was on the rear,
and I wanted to be at the rear when my people got
there so I could count them and see if they were all
getting on. * *

"Q. Did you hear any approaching of any automo-
bile?

"A. No, I did not.

"Q. Did you hear any horn sounded?

"A. Positively none. * *

"Q. If there had been any horn sounded or any sig-
nal of any kind, were you in a position to have heard
it?

"A. I was."

The witness Paulus, for the plaintiff, testified thus:

"Q. Now, where was the automobile when you first
saw it?

"A. I saw it approaching the intersection of the
railroad tracks, State and Commercial.

"Q. That was the intersection of the two railroad tracks?

"A. Yes; of course it was on the west side.

"Q. How far was that from the scene of this accident?

"A. Oh, about a hundred feet, I presume; I don't know just exactly."

E. E. Cooper, also a witness for the plaintiff, testified as follows:

"A. * * And in passing down the street the street-car going north, knowing that they always stopped on a certain line—

"Q. (Interrupting.) Going north on what street?

"A. Commercial; and there was an automobile coming from the north to the south on Commercial I was waiting for this automobile to go past."

The defendant R. E. Jones testified as follows:

"Q. Now, when you were driving down State Street—or going south on Commercial Street, I mean, —when did you first discover the plaintiff?

"A. Discover the plaintiff?

"Q. Yes.

"A. As she left the sidewalk just about as I was crossing the car tracks or maybe a little previous to that, running east and west on State Street."

While the automobile was going up Commercial Street Magdalene Tuffli was driving it, and the testimony shows that she was an inexperienced driver; that as the automobile approached the street-car the defendant R. E. Jones, fearing a collision with the plaintiff, took the steering-wheel and swung the machine to within a few inches of the street-car, attempting to drive between the plaintiff and the street-car.

While it may be true that the plaintiff did not see the automobile, it is also true that she had a legal right to leave the curb and cross the street to the street-car for the purpose of boarding it. The defendant R. E.

Jones testified that as the machine approached the street-car it slowed down to about five or six miles an hour, and the evidence for the plaintiff tends to show that it was going about ten miles an hour. It is very apparent from his own testimony that R. E. Jones saw the plaintiff at least one hundred feet away, before the accident occurred, and that for some distance he saw and knew that the plaintiff and her companions had left the curb and were crossing the street to the car line. It is a matter of common knowledge that an automobile traveling at the rate of five or six, or even ten miles an hour can be stopped within a very few feet. It clearly appears from his own evidence that the defendant R. E. Jones had ample time and opportunity to stop the machine and avoid the accident, but there is no claim or pretense that the automobile was stopped or that any effort was made to stop it.

If, as the plaintiff testified, she had left the curb and crossed the street to within a few feet of the north end of the street-car and had then turned and gone south, parallel with the street-car, and the automobile was going south behind her, she would not then be in a position to see the automobile and could not see it without turning around. She was lawfully on the street and would have a right to assume that any driver of an automobile coming from behind, who could and did see her for a distance of at least 100 feet, would either sound the horn or stop the machine, to avoid a collision, but she testified that she did not hear the horn although she would have heard it if it had been sounded.

Such a state of facts tends to show that the defendant R. E. Jones did not exercise reasonable care. The defendants cite and rely upon the case of *Harder* v. *Matthews,* 67 Wash. 487 (121 Pac. 983), but it appears

from the statement of facts in that case that the plaintiff "walked from behind the express wagon and stepped in front of the approaching automobile without seeing it." Accepting her testimony as true, as we must for the purposes of this decision, the plaintiff in the instant case went to and within a few feet of the north end of the street-car and then turned and walked south parallel with the street-car to or near its south end, and then without any warning was struck from behind by the automobile. It appears from the testimony that the defendant R. E. Jones saw the plaintiff, after she left the curb, at a distance of at least 100 feet. After a verdict the defendants would be liable under the "last clear chance" rule laid down by this court in *Richardson* v. *Portland Ry. L. & P. Co.*, 70 Or. 330–334 (141 Pac. 749).

The judgment of the Circuit Court is affirmed.

AFFIRMED.

BENSON, BEAN and BENNETT, JJ., concur.