Submitted on briefs December 4, affirmed December 11, 1923, mandate issued March 6, 1924.

## ALBERT J. SATHER *v.* JOSEPH V. GIACONI.

(220 Pac. 740.)

**Master and Servant—Operator of Instrumentality Causing Injury Presumed Owner's Employee.**

1. On showing that the instrumentality causing injury to plaintiff was the property of defendant, there is a presumption that the person other than defendant, operating it, was defendant's agent, servant, or employee.

**Master and Servant—Presumption of Agency in Operating Instrumentality Sufficient to Take Question to Jury.**

2. The presumption, from the fact that defendant was' the owner of the instrumentality which injured plaintiff, that the person operating it was defendant's servant or agent, is sufficient to take the case to the jury, notwithstanding strong testimony for defendant that the instrumentality was not under his control, but was leased or operated without his authority; Section 793 et seq., Or L., classifying presumptions as evidence, and whether a presumption is overcome by other evidence, as Section 797 provides that it may be, being for the jury to determine.

**New Trial — Not Grantable on Ground of Verdict Being Against Weight of Evidence.**

3. Under Constitution, Article VII, Section 3c, providing that no fact tried by a jury shall be otherwise re-examined in any court unless it can affirmatively say there is no evidence to support the verdict, if there is any evidence to support the verdict new trial can-

110 Or.—28

not be granted on ground of verdict being against the plain and manifest weight of the testimony.

## Master and Servant—That Defendant Collected Proceeds Competent to Show He Controlled Fishing Outfit.

4. On the question whether the persons operating defendant's fishing outfit, which injured plaintiff's net, were defendant's servants or agents, and he was in control of outfit, evidence that he collected the proceeds of the catch of fish is competent.

## Evidence—Explanation of Fact by Party not Conclusive on Jury.

5. Defendant's explanation of the fact, introduced to show that he was in control of his fishing outfit which injured plaintiff's net, and which he claimed was leased to those operating it, that he collected the proceeds of the catch of the outfit, by testimony that he did so by authority of his lessees, and that he was acting for them in so doing, was not conclusive on the jury; but they had a right to infer from his apparent assumption of authority over the proceeds that he was in control of the outfit.

## Evidence — Book Entries of Transactions Between Strangers Generally Inadmissible.

6. Generally, book entries of a third person of transactions between him and strangers to the litigation or one of the litigants are inadmissible.

## Appeal and Error — Trial — Order of Proof in Discretion of Trial Court, not Reviewable Except for Abuse.

7. Admission on rebuttal of matters properly part of plaintiff's case in chief, having to do with the order of proof, is within the discretion of the trial court, not reviewable in the absence of abuse of the discretion.

## Appeal and Error — Admission of Evidence of Matter Admitted Harmless.

8. Admission of evidence showing only what the adversary admitted, that he drew money, when the matter in dispute was by what authority he drew it and what disposition he made of it, was harmless.

## Damages—Loss of Profits from Tort Special Damages.

9. Loss of profits in a tort case is only a special damage, which must be pleaded so as to enable the court to draw from the averments the legal conclusion that loss of profits was the actual result of the tort, which is not the case where, in action for destruction of part of fish net, there was no statement of facts showing that the fishing business was profitable, or that any gain would have resulted from use of the net in its original form.

## Appeal and Error—Admission of Evidence of Loss of Profits Harmless Where Issue Withdrawn.

10. Admission of evidence of loss of profits was harmless where the court withdrew that issue from the jury, leaving to them only the question of general damages.

Trial—Error Held not Predicable on Remark of Court to Counsel.

11. Error cannot be predicated on the remark of the court to counsel in allowing exception to statement in charge, "Hereafter you will not probably argue the law to the jury," it being really a tribute to him.

Appeal and Error—Counsel's Contentions Rejected or Criticised by Charge Should Appear in Record.

12. To predicate error on the rejection or criticism in the charge of counsel's argument as to what the law was, counsel's statement should appear in the record, that it may be determined whether the rejection or criticism was legally just.

From Clatsop: J. U. CAMPBELL, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. G. C. & A. C. Fulton.*

For respondent there was a brief over the name of *Messrs. Norblad & Hesse.*

BURNETT, J.—The plaintiff, as owner of a gill-net used for fishing in the Columbia River, brings this action to recover damages for the destruction of a part of his net by the negligent operation of a purse-seine owned by the defendant. It is averred in the complaint and admitted by the answer that the defendant at all the times mentioned in the complaint was and now is the owner of a certain fishing vessel called "President Lincoln III," together with the necessary fishing appliances and paraphernalia belonging to it, including what is generally known as a purse-seine. The manner of operating both the gill-net and the purse-seine is averred in the complaint. In substance it is charged that the defendant's outfit, consisting of the vessel and purse-seine, was operated by his officers, agents, servants, employees and crew on his behalf and for his benefit and that they com-

mitted the wrongs of which the plaintiff complains while acting within the scope of their employment for and on behalf of the defendant. It is alleged that on July 22, 1918, the plaintiff had laid out his gill-net in the Columbia River at right angles to the general course thereof and was drifting upstream with the tide; that the defendant, by his said employees and crew, having full knowledge of the presence and location of the plaintiff's net, laid out the purse-seine within about thirty feet in front of the gill-net and between it and the ocean, well knowing that on account of the short distance between the net and the seine, the latter was bound to be and would be carried by the operation of the tide, into the net; on account of which and the manner in which the seine was operated, the necessary result would be to entangle the plaintiff's net and destroy the same. The complaint then avers:

"That after defendant, through his duly authorized officers, agents, servants, employees and crew had so wrongfully, negligently and carelessly laid out and was laying out his said purse-seine in the manner and fashion as above set forth, the tide drifted defendant's said purse-seine against and over and across plaintiff's said gill-net and while the same was so drifting as aforesaid, defendant, through his duly authorized agents, servants, employees and crew, wrongfully, willfully, carelessly and negligently, and with utter disregard to plaintiff's property, caused the same to be hauled, pulled or 'pursed' together, resulting in the tearing and damaging of plaintiff's said gill-net to such an extent that plaintiff lost one half thereof, which said one half of said net was at that time of the reasonable value of $1000."

The complaint also contains the following averment:

"That on account of the shortage of twine necessary for the reconstruction of plaintiff's said gill-net and on account of the shortage of labor existing at that time, all of which was well known to defendant, plaintiff was unable to knit one half of his said gill-net, so as to be of the same size as before it was so negligently and carelessly torn by defendant as aforesaid; neither was plaintiff able to purchase a net in extent and size equal to the amount lost by him through defendant's carelessness and negligence, or any other kind of gill-net suitable for fishing at that time of the year, and was therefore obliged to fish from the twenty-second day of July to the twenty-fifth day of August, when the salmon fishing season with gill-nets closed, with only one half of his net, resulting to plaintiff in the further damage of $1500."

The prayer of the complaint is for judgment against the defendant for $1,000 for loss and damage to the plaintiff's net; for the further sum of $1,500 for loss of profits; and for the third sum of $500 for punitive damages and for costs and disbursements.

Affirmatively, the answer alleges in substance that the defendant at all times set forth in the complaint was the owner of the vessel named, together with her tackle, apparel, furniture, machinery and appliances, including one purse-seine complete; that prior to all the times set forth in the complaint, the defendant had chartered and leased the whole outfit mentioned together with the navigation thereof to certain individuals, to be used in fishing; that the navigation and control thereof was vested exclusively in those individuals and at the time of the alleged injury to the plaintiff's property, the defendant had no control over the vessel or the navigation thereof.

At the trial, the plaintiff gave evidence in chief of the manner in which the injury was inflicted to the effect that he had laid out his gill-net across the channel of the Columbia River near the mouth thereof

and was drifting upstream with the incoming tide when the persons in charge of the vessel and the purse-seine belonging thereto came and laid out the seine immediately below the net so close thereto that the inevitable result was that the seine drifted against the net and, being much heavier and stronger gear, entangled the net; and when the seine was drawn in or "pursed," it fouled and tore the net so that about half thereof was utterly destroyed. Testimony was given concerning the value of the net. The plaintiff having rested his case, the defendant moved for a judgment of nonsuit and likewise at the close of the whole case, moved for a directed verdict for the defendant. Both these motions were denied.

On his behalf, the defendant gave evidence to the effect that at the time of the accident and for a long time prior thereto, he had leased the vessel and seine to some parties who were then in charge of same and that he had no control over them or direction in their operation. On cross-examination, it was brought out that the fish caught by the "President Lincoln III" for that season were delivered to a packing company and that the defendant drew from the company the money which paid for the fish thus delivered. On redirect examination he explained in substance that he drew the money at the request of his lessees for the purpose of dividing the same among them according to their several interests in the fishing venture of that season. In rebuttal, over the objection and exception of the defendant, the plaintiff called the bookkeeper of the packing company who exhibited leaves from its loose-leaf ledger showing an account against the "President Lincoln III" during the season of 1918, including payments made by the company on account of fish delivered. He testified that the defendant had drawn the payments which were made

to him but that the witness did not know for whose
account they were drawn or what disposition had been
made of the money. Copies of the ledger leaves were
offered in evidence over the objection of the defend-
ant.

Among other things, in charging the jury the court
said:

"Now, counsel for both sides gave you a great
many illustrations of what the law is. Some of them
were right, and some of them were not right—they
were right in that particular instance that they cited.
(For instance, Mr. Fulton was laying great stress on
the automobile, and the farmer's wagon, which was
good law under a case such as he cited, but might not
be the law in all cases.)"

At the close of the charge, the defendant excepted
to the portion of the excerpt just quoted which is
included in parentheses. When taking exception to
the instruction, some colloquy between the court and
the counsel occurred when the judge said to defend-
ant's counsel in the presence of the jury:

"You will be allowed an exception, and hereafter
you will not probably argue the law to the jury," to
which language the defendant by his counsel ex-
cepted.

1, 2. The principal grievance the defendant has
against the judgment is that the case ought not to
have been submitted to the jury because there was
no evidence to counteract the averment and the evi-
dence of the defendant that his outfit was under lease
at the time the injury occurred and that he had no
control over the same. This contention is futile
under such precedents as *Houston* v. *Keats Auto Co.*,
85 Or. 125 (166 Pac. 531); *West* v. *Kern*, 88 Or. 247
(171 Pac. 413, 1050, L. R. A. 1918D, 920); *Doherty* v.
*Hazelwood Co.*, 90 Or. 475 (175 Pac. 849, 177 Pac.

432); *Clark* v. *Jones,* 91 Or. 455 (179 Pac. 272); *Rook* v. *Schultz,* 100 Or. 482 (198 Pac. 234). The principle is thoroughly established in this state that if it is shown by any evidence that the instrumentality which caused injury was the property of the defendant, albeit some other person was operating it, the presumption is that such person was agent, servant or employee of the defendant and that a situation thus disclosed is sufficient to take the case to the jury on behalf of the plaintiff, notwithstanding the defendant on his part may give strong testimony to the effect that the instrumentality was not under his control but was under lease or was operated entirely without his authority. It is argued by the defendant that only a presumption arises out of the mere fact that the defendant was owner of the thing, the operation of which caused the damage, and that the presumption prevails only so long as there is no substantial evidence to the contrary. Many precedents are cited to that point but they have to do with the matter of weighing the testimony of presumption on one side and the positive declarations of witnesses on the other. No authority is cited holding that a presumption such as is here described is not testimony. On the contrary, the Code, Or. L., Section 793 et seq., classes presumptions as evidence and such is the doctrine of such cases as *Hanson* v. *Oregon-W. R. & N. Co.,* 97 Or. 190 (188 Pac. 963, 191 Pac. 655). True enough, a presumption may be overcome by other evidence, Or. L., Section 797, but whether it is overcome or not is for the jury and not for the court to determine, at least in the first instance.

3. Under the earlier precedents in this state, such as *Serles* v. *Serles,* 35 Or. 289 (57 Pac. 634), the rule substantially as the defendant contends has obtained when the matter was before a trial court upon the

question of whether a verdict should be set aside or
not. Even in those days, as taught in the Serles
case, it was the duty of the trial court to submit a
case to the jury in the first instance if there was any
evidence to support the contention of the plaintiff;
but the power was ascribed to the trial judge to set
aside a verdict when it was against the plain and
manifest weight of the testimony. This, however,
is no longer the rule since the adoption of the
amended form of Section 3 of Article VII of the Con-
stitution, declaring that "No fact tried by a jury
shall be otherwise re-examined in any other court of
this state unless the court can affirmatively say there
is no evidence to support the verdict." Even under
the original authorities it was incumbent upon the
trial court to submit the case to the jury in the first
instance and under these precedents the court was
right in denying the motion for nonsuit and in re-
fusing to direct a verdict for the defendant. It is
not disclosed by the record that any motion for new
trial was made and if made, it would have been un-
availing on this point since the promulgation of the
amended Constitution above noted.

4, 5. The ownership of the purse-seine fishing out-
fit having been admitted, it was competent to show
that the defendant collected the proceeds of the catch.
This was shown by his own cross-examination. It is
true that he explains why he collected the money,
that it was by authority of his lessees and that he was
acting for them in so doing; but that is not conclusive
upon the jury. They had a right to infer from his
apparent assumption of authority over the proceeds
of the catch that he was the owner and in control of
the vessel and the seine that caught the fish.

6–8. Complaint is made of introducing the ledger
accounts of the packing company to whom the fish

were delivered and in admitting the testimony of the bookkeeper to the effect that the defendant had drawn the money on that account. As stated by Mr. Justice Harris in *Redtke* v. *Taylor*, 105 Or. 559, 580 (210 Pac. 863, 870, 27 A. L. R. 1423):

"The general rule is that entries of a third person of transactions between such third person and others not parties to the litigation, or one of the parties litigant, are not admissible because they are hearsay and *res inter alios acta.*"

See, also, *Watrous* v. *Cunningham*, 65 Cal. 410 (4 Pac. 408); *Treat* v. *Barber*, 7 Conn. 274; *Union Bank* v. *Call*, 5 Fla. 409; *Mercier* v. *Copelan*, 73 Ga. 636; *Harrison* v. *LaGow*, 1 Blackf. (Ind.) 307; *Levy* v. *Holberg*, 71 Miss. 66 (14 South. 537); *Perrine* v. *Hotchkiss*, 58 Barb. (N. Y.) 57; *Sloan* v. *McDowell*, 75 N. C. 29; *Powers* v. *Hazelton etc. Ry.*, 33 Ohio St. 429; *Minton* v. *Underwood Lumber Co.*, 79 Wis. 646 (48 N. W. 857). The principle is that the party against whom the books of a third party are offered in evidence is a stranger to the transaction delineated. The entries are not made under oath or in pursuance of any official duty and the party against whom they are offered has no opportunity for cross-examination. So far as the oral declarations of the bookkeeper to the effect that the defendant drew the money are concerned, the only objection that can be urged against them is that they were not proper rebuttal but were part of the plaintiff's case in chief. This, however, has to do with the order of proof which is within the discretion of the trial court. It does not appear by the record taken altogether that the discretion in the matter was abused. No doubt the defendant would have been given an opportunity to answer the testimony if he had any answer to it. The question is

whether the error in admitting the books of account constitutes substantial error prejudicing the defendant in the trial. It is stated in the defendant's brief that nothing in either the accounts introduced as exhibits or the testimony of the bookkeeper was contradictory of anything that was said in testimony by the defendant. He said he drew the money. The bookeeper said he drew the money. The accounts show that the money was drawn, and were explained by the bookkeeper to the effect that the defendant was the man who drew the money as shown by the accounts. The question in dispute was by what authority he drew it and what disposition was made of it; but neither the bookkeeper nor the books threw any light on that subject. The three sources of testimony, the defendant, the bookkeeper and the books, concur in saying that the defendant drew the money. They coincide no further than that and under such circumstances the admission of those items in evidence in the rebuttal was harmless.

9, 10. Error is ascribed also to the admission of testimony on behalf of the plaintiff to the effect that he lost $1,500 of profits by reason of being deprived of his net. If nothing else were shown, this would indeed, under the pleadings, constitute material error. The claim is not in the form of a demand for the reasonable value of the use of the net. There is no statement in the complaint about what such reasonable use would be worth. Neither are there stated any facts showing that the fishing business was profitable or that any gain would have resulted from the use of the net in its original form. The loss of profits is only a special damage where the case is founded upon tort.

"General damages are such as a party necessarily sustains from the wrong of which he complains, and

such as the law presumes would inevitably result from the act or omission of the adverse party causing the injury, and are recoverable under an averment in the complaint of plaintiff's pecuniary loss, without stating their particular nature. * * Special damages, however, do not necessarily result from the wrongful act or omission of the adverse party, but are such as may flow from them as a natural and proximate consequence, caused by his negligence or design; and, as the law does not presume that such an effect will inevitably follow, it is incumbent upon the plaintiff to allege specifically in the complaint the facts constituting his special damages, in order that the adverse party may have notice thereof, and be prepared for trial." *Dose* v. *Tooze,* 37 Or. 13, 16 (60 Pac. 380).

From the allegation of the destruction of the plaintiff's property, the law at once infers general damages, but we cannot draw from such an averment the conclusion that there was any loss of profits. From time immemorial, the business of fishing has been uncertain and variable in its results. Men have fished all night and caught nothing and in the morning have gathered abundantly and miraculously from the products of the sea. So in this case, if the plaintiff would recover for loss of profits, he must allege the grounds thereof as a basis of special damages. His averments on that score must be such as to enable the court to draw therefrom the legal conclusion that loss of profit was the actual result of the tortious acts of the defendant. As before, if nothing else were shown in the record, the admission of the testimony relating to the loss of profits would constitute material error; but when the court came to charge the jury, the matters of profits and of punitive damages were both withdrawn from the consideration of the jury on the ground that the testimony was too

vague and uncertain to support either of them. The only question left to the jury in that respect was the matter of general damages under instructions that were not excepted to.

11, 12. As to the colloquy between the court and counsel relating to the charge alluding to counsel by name and saying that he would not probably argue the law to the jury hereafter, we cannot conceive that material error can be based upon such a showing. In the first place, the record is devoid of any statement of what counsel had said to the jury. For aught that appears, in the zeal of argument he may have said something well deserving the comment of the court in the charge. The statement to him when the exception was allowed, that hereafter he would probably not argue the law to the jury was really a tribute to his ability as a lawyer and a legitimate intimation that in the present instance he had unintentionally overstepped the bounds of his duty as an advocate and that in his own sense of propriety he would not repeat it. In almost every trial, the presiding judge is called upon to reject the contentions of counsel on one side or the other as to the law affecting the case. If error is to be predicated of this, the statement of counsel which had been criticised should appear in the record so that we may determine whether the rejection or criticism of the court was legally just or not.

Other errors were assigned but were not argued and hence will not be given attention here. On the whole case, the judgment should be affirmed, and it is so ordered.                                  AFFIRMED.